the case of Daniels v. Executive Director of the Florida Fish and Wildlife Conservation Commission. Good morning. Wait just a moment. I have everybody in the room here. I don't see Mr. Erdl. Oh, there we go. Great. Perfect. All right. So we'll call the case again. Mr. Daniels v. Executive Director of the Florida Fish and Wildlife Conservation Commission. And we will begin with Mr. Erdl. Am I saying that correctly? Ortel, but that's fine. Ortel, thank you very much and I apologize for the mispronunciation. There's no problem there. Well, thank you. I'm Kenneth Ortel here on behalf of the appellant Tim Daniels. Just to briefly relate Mr. Daniels' situation causing his arrest by the Florida Wildlife Commission. He was fishing for pompano in the exclusive economic zone created by the Magnuson Act using a gill net and he was arrested for doing that under a Florida rule. Eventually, this case was heard before Judge Jose Martinez, a district court judge in Southern District of Florida. And Mr. Martinez denied relief requested by Mr. Daniels in the way of an injunction and a declaration that his arrest was totally violated the principles of Magnuson Act which imposed a preemptive status by the federal government. Mr. Erdl, could not your client have raised all the arguments he's making here in the proceeding that resulted in his payment of a fine? In the lower, in the criminal case in state court? No, every argument he makes here could have been raised in the administrative or criminal proceeding involving the fine that was imposed. I assume it could have, yes. All right. What's the consequence of his failure to do that? I don't think he waives his right to challenge the constitutionality of his arrest. He could challenge the constitutionality in the Florida proceeding. He could have. And if he lost that argument, he could go to the Supreme Court of Florida. And if it rejected the argument, he goes to the Supreme Court of the United States. That's one possible avenue. That's the policy underpinning the Rooker-Feldman doctrine. Well, that would be one possible avenue he had, but he, I don't think. Well, the Rooker-Feldman doctrine says that we don't entertain federal constitutional claims that could be raised in your state court proceeding. But that argument wasn't raised before Judge Martinez when he issued his ruling granting summary judgment to the state, nor is it raised in the state's brief. I still think that Mr. Daniels has a perpetual right to challenge the constitutionality of his situation because of the status of the state's rules, which, of course, I think no one could argue with. Should he go out and go fishing again, he would be subject to be rearrested. And the question is preserved as to whether such actions by the state of Florida would be legitimate. I think the answer is clearly they would not be legitimate, that the state has no authority to assert any regulatory or enforcer in criminal statutes in the exclusive economic zone created by the Magnuson Act, which states that the federal government has exclusive jurisdiction over all fish in the EEZ. Now, well, except that it does have does have a very specific exception, does it not? I mean, the exception there does seem to allow the state expressly allow the state to make regulations that affect vessels that are registered within the state. That's correct. That's correct. That is legally insufficient for two reasons. When the Magnuson Act was first passed, it allowed states to regulate the fishing activities of vessels registered in that state. That is exactly what Florida did in this case. However, except that when the amendments were added in 1996 or whenever it was.  Oh, the amendment, the amendment, right, when the amendment was added. The original statute was amended in 1984. That amendment removed the state's ability to regulate the fishing activities of vessels registered in that state. So prior to the 1984 amendment, states were allowed to regulate fishing within the EEZ of vessels registered in the state. I'm sorry. There's a 1996 amendment to the Magnuson Act that provides that a state may regulate a fishing vessel outside the boundaries of the state if the fishing vessel is registered under the law of that state and there is no fishery management plan or other applicable federal fishing regulations for the fishery in which the vessel is operated. Right. OK, that's the amendment I'm talking about. And I understand. And so my question for you, then, is why doesn't that expressly allow for the types of regulations that the Pompano, the Florida's Pompano regulations are? That answer is directly contained in the statute itself, the Magnuson Act. And we'll have to all remember that the act states the United States has exclusive jurisdiction over fishing in the EEZ. That's number one. OK, but I'm so sorry. I guess I don't understand why that is, because the amendment that I've just read to you, the 1996 amendment is an amendment to the Magnuson Act. And so it is read as part and parcel of the rest of the statute. So my question is, why isn't that enough? To expressly give the state of Florida the right to be able to enact or to promulgate these regulations, provided that there's no fishery management plan or other applicable federal fishing regulations for the fishery in the EEZ. I was getting to that, and I agree. The original fisheries management plan for the fishing question, Pompano, in this section. However, the definition section in the Magnuson Act answers the question. It defines the fishery. Don't forget, the act says the U.S. has exclusive authority over the fishery. The term fishery in subsection 12 of the act includes any fishing for such stocks. So the U.S. has exclusive jurisdiction over the fishery. The definition of fishery includes fishing for such stocks. The term fishing is also defined. It means catching, taking, or harvesting a fish, or the attempted catching, taking, or harvesting of fish. I'm sorry. Let me ask you a question, because I think I'm missing a step here. In order for that to be the case, that this exception doesn't apply, that would mean that there would have to be federal fishing regulations for the fishery that we're talking about. And there is no, is there, are there some kind of federal fishery regulations that I have, it's possible I've missed them. But is there something like that for the EEZ here? No, for the EEZ regarding Pompano, let's backtrack. The Fisheries Management Council is supposed to address management of certain fish stocks, in other words, certain species, if they find they need protection. The Fisheries Management Council for this part of the EEZ has determined Pompano need no protection. They have decided there is no need for them to place any limits on equipment, take, or the amount of fish that are harvested in this area. So that means that the management of the EEZ in this area, by the committee that does it, has determined the fish stocks of Pompano in this area do not need protection. So I think I'm understanding what you're arguing. You're arguing that the mere fact that they haven't regulated Pompano means that they've regulated Pompano, right? Is that what you're saying, basically? No, I'm saying they've decided Pompano, the stocks of Pompano do not need at this time regulation, more protection, more management, or stock limits, or any of that nature. So that has to mean one of two things. Either you're arguing that the fact that they have decided that it doesn't need additional management is in and of itself a federal fishing regulation for the weather, you know, implicit regulation of the fishery. Or else it necessarily means, I think, that the amendment that we've been talking about applies and the state of Florida can then regulate that fishery, can regulate Pompano in that fishery. What am I missing? No, that would violate the supremacy clause to allow a state to regulate part of the EEZ where the U.S. has exclusive authority. And we all know what exclusive means. The state can come in and decide that this species should be regulated when, in fact, the Fisheries Management Council has decided it doesn't need regulation. But that's what's happened in this case. Under the guise of regulating a fishing vessel, the state of Florida is now deciding what type of equipment its fishermen are allowed to use and what species they're allowed to  When fishermen from a neighboring state, say Georgia, are free to use any equipment they wish and free to catch as many as they want, and the state agrees, they have no authority over a foreign registered vessel. What the state has done in this case is, under the guise of regulating a fishing vessel, they're actually regulating the fishing itself, preventing You have gone over your time, but you've reserved five minutes. Would you like to take some of that time now or would you rather keep that reserved? The time goes by so quickly here. It does. I'm sorry. We talk a lot and we're trying to get questions. I'll reserve the rest. Thank you. All right. Ms. Hurtado will hear from you. Would you like me to address that issue, Your Honor? Your time and you can address whatever you want. We may ask you questions and we'll hope that you'll address the questions if we do. Oh, yes. Yes, Your Honor. First, I'd like to start with the fact that Judge Martinez found that plaintiff had no standing in this particular case. And I think there's two particular issues to address. One, that the specific injury that plaintiff alleges was the actual arrest under 68B-35-004-4. So that is not a statute that plaintiff pled in his amended complaint. Let me ask you a question about that, because he does say in various places in his complaint, at least it seems to me, that he's challenging the enforcement of all of the state Pompano regulations and the Pompano fishery management rules. His prayer for injunctive relief seeks a preliminary and permanent injunction prohibiting the enforcement of the Gulf of Mexico, Florida Pompano rules. It seems like he is challenging all of them. It also talks about he says he was continuously being denied due process and equal protection under the federal constitution due to the promulgation and enforcement of the Florida Pompano rules. And the Florida Pompano rules, as we know, are contained in Chapter 68B-35 of the Florida Administrative Code. And so it seems like he has alleged enough to give him standing and challenging all of these rules as sort of a whole and acting together. Because as you know, they act together. Why is that not the case? Well, they act together, but there are, I mean, I think it's over 40 sub-provisions within those five sections of 68B-35. So there are, and he uses specific language. It's page three of his amended complaint, if I can, where he says that he cites the two regulations, one of them being 35-005, and he specifically says that these do not in any way govern fishing for Pompano in Florida waters. So he is specifically targeting those, which is why the majority of his brief is the issue of the preemption and the EZ. So he starts off his amended complaint by saying, this is what I'm focusing on. So to be able to put in a wherefore clause that this is what I meant to do, I think is an issue, I mean, that is fatal to the pleading. It doesn't give proper notice to a defendant that this is what we're here to argue, the entire scheme. The entire section of Pompano fishing doesn't only exist in federal waters. There are Florida water regulations that exist within that. So for him to say, well, you have to throw away the whole thing, it does not sound like the same argument he's making where it's the EZ is being preempted and any actions in the EZ is being preempted by the Magnuson Act. So I don't believe he's either addressing the arrest, which he hasn't cited in his pleading, and so I don't think he has standing for that, or he's really addressing, and I think this is the argument, that he's addressing the issues of the state of Florida creating this PEZ within the EZ, the Pompano endorsement zone within the EZ, and the requirements there to comply with Florida state law within that EZ. And for that, I believe that's a statute of limitations issue. He's known about that. I mean, this is a 20 plus year regulation, and he's been fishing way beyond, I can't hear, but I see that you're speaking. It would not possibly be the case that when the statute goes into existence, that's when the statute of limitations begins to apply. That's not what I'm saying, Your Honor, I'm sorry. What I'm saying is that he was, besides the fact that his fishing experience has been that he goes to the PEZ, he fishes in the PEZ, and he lands in the PEZ, so he is well in that position, that it's the inconvenience of having to go there all these years. That is really the injury that he is complaining about. That's the actual injury. So I'm not saying it's because it's an old regulation. I realize I said that, but what I really mean is that it's his experience. He was injured long ago by the creation of this PEZ because he's been fishing for way beyond four years, and four years in statute of limitations, which he concedes was under section 1983. Well, but that's part of it, as I understood it, and I believe the district court did reach the merits and the alternative that he's saying he's being discriminated against. So I guess one point of clarification I have is, are fishermen arrested if they don't have the Pompano endorsement or, I guess, license? Yes. Okay, and so why is it only restricted to vessel owners? I guess I'm trying to understand how that operates, and this speaks to, is this really a discriminatory law in any way that impacts him? So I think what he's saying is it discriminates against Florida fishermen, people in Florida vessels. Yes, you have to actually have, you have to have the saltwater endorsement with the restricted species. I mean, a saltwater license with the restricted species endorsement plus the Pompano endorsement in order to use a gill net, which is a band here within Florida waters, to use it within the PEZ. That's where you have to use it. That's where you have to fish. You can fish for unlimited quantities there, but you have to use it there within the PEZ and you have to land it there within the PEZ. So, I mean, I don't think I need to make his argument for it, but I suppose that's what he's saying is that that is discriminatory against Florida fishermen. And you are saying it's not because? I'm not saying necessarily that it's not. I'm saying is that we have the right to discriminate against. Because the reason is, Your Honor, conservation is the key here, right? We have determined that Pompano is a restricted species and we're trying to protect that species. And under the argument that plaintiff is making regarding the preemption, if this court were to strike down the protections of the Pompano by saying that the MSA completely preempts the entire field of fishery, then what right does Florida have to protect the Pompano? The Pompano would be completely unprotected. There would be absolutely no protection because there's no, pardon me, I'm sorry, because there's no FMP and then Florida couldn't act. But I think it's very clear. I think we have to have some context on the MSA. I mean, at the time that it was enacted, the backdrop is this is a foreign policy response. This was not a federal government wanting to, you know, wrestle control of the fisheries from the coastal states. This was, you know, it says it right there in the act. And if you look at the legislative history, this was foreign, large foreign fleets that were decimating our fisheries coming from other countries. And the backdrop of the enactment, there's also the United Nations Law of the Seas conference, and they're trying to figure out what is our, what's our boundary? What are our, you know, individual countries? Right, no, and I'm not challenging. I mean, well, he did not, as far as I understand, challenging the purpose, the merits behind wanting to have these conservation efforts. I guess I'm just trying to find out, or for myself understand, does this really boil down to the fact that you can have a federal regulation that is more generous than the state law, which can impose stricter requirements. And I think that's what the exemption Judge Rosenbaum kept asking about these amendments is that the federal government, it does seem, has recognized that the heightened interest that Florida has because of the circumstances you just described, and why perhaps preemption wouldn't therefore apply here. So again, just really trying to understand how best to frame this case. I think that, and I hope I can answer your question, Your Honor. The preemption issue, I don't think the MSA is meant to wholesale preempt fishery, or state action in fishery. You have specific language in the section that Judge Rosenbaum was discussing, 1856A3, that says the states have jurisdiction over Florida vessels where there is no fishing management program or federal regulation. And that is the exact case with the Pompano fishery. There is nothing protecting the Pompano fishery under the MSA. So therefore, it's up to the states to promulgate rules or statutes to protect that particular fishery, and the MSA grants them that authority to do so. And I realize it hasn't been yet really interpreted here in this circuit, but there are other circuits that have interpreted it in that same way. There are state Supreme Courts in this country that have interpreted it in the same way. When there is no FMP, the state has every right to legislate or protect those fisheries in their waters. And even when there's FMPs, they have found that if there's no direct conflict, that there should be allowed the state's action to be concurrent with the FMP. But we don't have to worry about that in this case because there's no FMP. But I say that really to show that the MSA is not, I don't even think that that wasn't the intent. I mean, it talks about preemption. It talks about, in the legislative history, it says it is not our intention to preempt. That will be the unusual. It will not be the usual. And there's so much partnership discussion within the act of how every one of these councils is a regional partnership between the federal government and that state in order to best way to conserve the fishery of that area. I mean, the paramount concern of the MSA is to conserve. It is not to maximize profits. It's not to ensure everybody is getting their fair share. In order to have a sustainable fishery, there may be circumstances such as ours where we're going to say you can't use gillnets in certain areas. We have to protect this fishery. In fact, there is a letter from the council, the Gulf Council. I think it was actually presented by the plaintiff. It's document 23, appendix 142, your honor, that says it's sort of a reminder from the council to the commission saying, hey, you have this authority to go into the EEZ and enforce your regulations regarding Pompano in the EEZ. You have that right under 1856 A3. You should be doing it. We noticed that there was a drop once the regulations were enacted, the Pompano endorsement, but now it's starting to go up again. The landings are starting to go up again. What's going on here? Do you need us to step in? If you don't, please continue to regulate and continue to enforce the Pompano regulation in the EEZ. It's essentially an invitation to say, get in there. That's their interpretation, and that's the council. All right. If you have nothing further, Ms. Fregato, and the panel has no further questions, Mr. Ortel has reserved five minutes. Thank you. Thank you, your honor. Thank you, your honor. First, I want to respond to you, Judge Cioffi. You asked if Mr. Daniels could erase these issues before the state court. The answer is no. Why not? Because the state attorney dropped all these charges. When this was brought before the state attorney, the state attorney- Before the state attorney dropped them. Well, the state attorney just refused to prosecute, and the case was dismissed. Okay. Now, secondly, with regard- Let's go back to the Magnuson Act. I can't repeat this, and I won't have to speak louder, but it says the federal government has exclusive authority over the fish in the EEZ. Okay, the fish means all the fish. The term fishery is also defined, meaning the particular stocks of fish, the various species. Now, in this case, we're talking about Pompano. So the act says, combine these, the federal government has exclusive authority over Pompano in the EEZ. Exclusive authority. So now what's the fishery? The fishery includes the act of fishing. That's what the statute says in the definitional section. So if you put those together, it's crystal clear that the federal government- The problem, though, with your interpretation seems to be that it renders meaningless the 1996 amendment that we talked about earlier that says a state may regulate a fishing vessel outside the boundaries of the state if the fishing vessel is registered under the law of that state, and there's no fishery management plan or other applicable federal fishing regulations for the fishery in which the vessel is operating. How does that still have meaning under your interpretation of the Magnuson Act? Because the act clearly differentiates the act of regulating a vessel compared to regulating the act of fishing. And as a colloquy, as we pointed out in our brief, the only agency in the state of Florida that regulates fishing vessels is the Department of Highway Safety and Motor Vehicles. The Florida Wildlife Commission has no authority under our statutes to regulate fishing vessels. Now, you can regulate fishing vessels in a lot of different ways, but under the act, you can- A state cannot regulate the act of fishing in the EEZ. That would totally turn the act on its head. Anytime a state wanted to regulate fishing, it could just arrest the captain of a vessel registered in the state that's using a gillnet. What else would it be enforcing against the vessel if it's not the purpose of the vessel? Well, first of all, the question depends on what does regulate the vessel mean? Well, it says regulate a fishing vessel, right? It doesn't say regulate any vessel. It says regulate a fishing vessel. I know we're talking about fishing vessels. Magnuson Act is for the purpose of conserving the fisheries, right? No, the act does not give the state to regulate fishing in the EEZ. That would turn the act on its head, which is what happened in this case. You can't catch pompano commercially with a hook and line. You have to catch it with an egg or else there is no fishery. You can't make a living trying to catch pompano in the EEZ casting out fishing lines. You have to use an entanglement. Well, let's say that we agree with you in some way that your client has standing to be here. Can you talk a little bit about the discriminatory impact then? I mean, let's say that regardless of whether you're properly before the court, there is a distinction being imposed against Floridian fishermen as opposed to non-Floridian fishermen. What is the real harm that is happening there, especially in light of the state's position that the Florida waters are subject to increased harms that maybe don't apply in other places? Florida can regulate whatever it wishes in its own waters, and it has. But I agree with Mr. Hurtado. The Magnuson Act was passed to protect domestic fishermen from predation by factory ships and guaranteed to all fishermen, sport and commercial, equal access to the resource. Now, that raises an equal protection argument because only Florida fishermen are subject to Florida's restrictive rules. Mr. Daniel's boat could have been right next to a boat registered in Georgia using the same equipment, and he would be immune from prosecution by the state. State agrees with that proposition. It says so in its briefs. If there's anything more discriminatory against the lawful catching of a commercial fish, a federal act was designed to protect. This fits that definition. It's absolutely outrageous that a Florida fisherman can be arrested in federal waters for the same activity a vessel operator from a foreign neighboring state can fish in with impunity. And that's the present situation, and the state does not argue with that. I think we have your argument. Thank you so much. And we will be in adjournment. Can I ask one more point I wanted to get to? I want to refer you to the Fourth Circuit Court of Appeals. I'm sorry. Is this in your briefing? Yes. Yes. We have it already, and we will review it. I just want to reference that case. City of Charleston versus America. Thank you very much. We are now in adjournment. Thank you.